

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAPHNE COLLETTE TATE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:14-cv-8044-LSC |
| | ) | (2:13-cr-0082-LSC-TMP-1) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OF OPINION

I.    Introduction

This is a motion to vacate, set aside or correct a sentence pursuant to 28 U.S.C. § 2255, filed by Petitioner Daphne Collette Tate ("Tate") on July 24, 2014.  (Doc. 1.) Tate challenges her convictions and sentences resulting from her plea of guilty to possession of a counterfeit check, bank-fraud conspiracy, possession of stolen mail, and aggravated identity theft arising out of her membership in a multi-state check counterfeiting ring.  For the reasons set forth below, Tate's § 2255 motion is due to be denied.

II.    Background

A superseding indictment was entered on March 27, 2013, charging Tate and five co-defendants with various crimes related to check counterfeiting.  Tate was

charged with one count of uttering and possessing a counterfeit security, aiding and abetting in violation of 18 U.S.C. §§ 513(a) and 2 (Count 1); one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 1344 (Count 2); four counts of possession of stolen mail matter, aiding and abetting in violation of 18 U.S.C. §§ 1708 and 2 (Counts 3 through 6); and five counts of aggravated identity theft, aiding and abetting in violation of 18 U.S.C. §§ 1028A and 2 (Counts 7 through 11). (Doc. 19 in criminal case[1].) The indictment also contained a notice of the Government's intent to seek forfeiture against Tate under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 for the offense charged in Count 2. (*Id.*)

On April 30, 2013, Tate signed a plea agreement and pled guilty in this Court to Counts 1, 2, 3, 7, and 9. (Docs. 31 (plea agreement) and doc. 159 (transcript from guilty plea hearing)). Tate stipulated that the crimes involved a loss of over $200,000. She also consented to pay restitution jointly and severally with any convicted co-defendants in the amounts and to the victims determined by the Court at the time of sentencing and to an entry of forfeiture jointly and severally with any convicted co-defendants in an amount to be determined by the Court at sentencing. (Doc. 31.) In exchange for Tate's plea, the Government stated that it would move the Court to

---

[1] All citations to docket entries will hereafter refer to entries in Tate's criminal proceeding, unless otherwise noted.

dismiss Counts 4, 5, 6, 8, 10, and 11 of the superseding indictment at sentencing. Tate's plea agreement contained an appeal waiver with limited exceptions.

Tate's pre-sentence investigation report ("PSR") stated that the statutory maximum term of imprisonment on Count 1 is 10 years; 18 U.S.C. § 513(a); the maximum term of imprisonment on Count 2 is 30 years, 18 U.S.C. § 1349, 1344; and the maximum term of imprisonment on Count 3 is five years, 18 U.S.C. § 1708.  The PSR stated that Counts 1, 2, and 3 are grouped for Sentencing Guidelines ("Guidelines") calculation purposes, U.S.S.G. § 3D1.2(d), and calculated a total offense level of 25 on these counts consisting of: 1) a base offense level of seven, pursuant to U.S.S.G. § 2B1.1(a)(1); 2) a 12-level increase because the loss amount was over $200,000 and under $400,000, pursuant to U.S.S.G. § 2B1.1(b)(1); 3) a four-level increase because the offense involved more than 50 victims, pursuant to U.S.S.G. § 2B1.1(b)(2)B); 4) a three-level increase because Tate was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive, pursuant to U.S.S.G. § 3B1.1(b); 5) a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1; and 6) a three-level decrease for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).  (*See* Doc. 72 in criminal case.)  Combined with a criminal history category of II, the total offense level

of 25 yielded an advisory Guidelines range of 63 months to 78 months imprisonment on Counts 1, 2, and 3.  The PSR also noted that the Guidelines sentence on Count 3 would be capped at 60 months imprisonment, which is the statutory maximum sentence on that count, U.S.S.G. § 5G1.1(a).  For Counts 7 and 9, the PSR stated that the statutory sentence is two years on each count, 18 U.S.C. § 1028A, and that the terms of imprisonment on Counts 7 and 9 shall not run concurrently with any other term of imprisonment imposed on Tate under any other provision in law, including any term of imprisonment on Counts 1, 2, and 3, 18 U.S.C. § 1028A(b)(2).  However, at the Court's discretion, it may run the two, 2-year terms concurrently with one another.  18 U.S.C. § 1028A(b)(4).  The PSR noted that the Guidelines sentence for Counts 7 and 9 is the term of imprisonment required by statute, which is two years consecutive on each count.

This Court sentenced Tate on August 28, 2013.  *See* transcript of sentencing hearing, doc. 160.  Tate's objections to the PSR were only to the two-level increase for obstruction of justice and to the three-level increase for the manager or supervisor role.  The Government moved for a 20 percent downward departure from the low end of the Guidelines range as calculated by the Court on Tate's sentence for Counts 1, 2, and 3 because Tate provided substantial assistance to the Government pursuant to

U.S.S.G. § 5K1.1.  The Court overruled Tate's objections to the PSR, granted the Government's motion for the 20 percent downward departure, and granted the Government's oral motion to dismiss Counts 4, 5, 6, 8, 10, and 11.  The Court sentenced Tate to a total term of 74 months imprisonment: 50 months as to Counts 1, 2, and 3 concurrently with each other, plus 24 months as to Counts 7 and 9, concurrently with each other but consecutively to the sentence imposed on Counts 1, 2, and 3.  Tate was also sentenced to a term of supervised release of 60 months; ordered to pay restitution jointly and severally with several co-defendants in the amounts of $29,504.00 to Regions Bank, $28,634.33 to Wells Fargo, and $1,981.37 to BBVA Compass; and also ordered to forfeit property in the amount of $60,119.70 to the United States.  A judgment reflecting the aforementioned terms as well as a final order of forfeiture were both entered on August 30, 2013.  (Docs. 77 and 78 in criminal case.)  Tate did not appeal.

On May 15, 2015, the Government filed a motion pursuant to Rule 36 of the Federal Rules of Criminal Procedure seeking that the Court correct certain clerical errors in the judgment and final order of forfeiture as to the restitution and forfeiture provisions.   The corrections pertained to which co-defendants owed certain restitution amounts to which victims jointly and severally as well as the fact that Tate

owed the forfeiture amount of $60,119.70 jointly and severally with her four co-defendants.  The Court granted the motion, entered an amended final order of forfeiture on May 19, 2014 (doc. 145) and an amended judgment on May 21, 2014. (Doc. 147.)

On July 24, 2014, Tate filed the instant *pro se* § 2255 motion in this Court. The Court conducted an initial review of her motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings which revealed that although Tate cited case law relevant to an ineffective assistance of counsel claim, she offered no facts in support of such a claim.  Accordingly, the Court issued an order to Tate to show cause within 20 days why her motion should not be dismissed for failure to state a claim upon which relief may be granted.  (Doc. 2 in this action.)  On September 28, 2014, Tate filed a request to respond to the show cause order out of time.  Attached to her request, she submitted a form § 2255 motion in which she asserted four additional/expanded claims:

> 1) " Plea not knowing and voluntary or intelligently made" — " I would not have signed a plea agreement had I known that I would face additional enhancements.  I would have insisted on going to trial. Counsel did not inform me of additional enhancements that would or could be placed upon my person after the plea agreement was signed."
>
> 2) " Plea was induced by threat to prosecute third party" — " I was told that my disabled son would be prosecuted if I did not enter into a plea

agreement or plead guilty."

3) "Failure to investigate" — "I was sentenced to a dollar amount that was found to not be true and was later corrected. Had my attorney investigated, she would have been aware of this error and the money enhancement would have been lowered."

4) *Alleyne* error — "My guideline range was enhanced on elements that were not charged in the indictment, agreed to by me, or submitted to a jury. This is a violation of my Due Process rights and rights to a trial by jury. I was enhanced for role in the offense, loss amount, and victims."

(Doc. 3 in this action.)

Although the Court granted Tate's request for 15 additional days to respond to the show cause order, Tate never submitted anything further. Accordingly, her § 2255 motion is ripe for review.

III.   Discussion

A.   Timeliness and non-successive nature of Tate's § 2255 motion

Because Tate filed her § 2255 motion within one year of the date that the judgment of her conviction became final, the motion is timely. See 28 U.S.C. § 2255(f)(1). Further, nothing in the record indicates that Tate previously filed a § 2255 motion. Thus, the current motion is not "successive" within the meaning of § 2255(h).

B.   Several of Tate's claims are barred by the appeal waiver in her plea

agreement

Tate's signed plea agreement contained a waiver of her right to appeal her conviction and/or sentence as well as her right to challenge her conviction and/or sentence in a post-conviction proceeding, with limited exceptions: she may contest in an appeal or in a post-conviction proceeding any sentence imposed in excess of the applicable statutory maximum sentence; any sentence imposed in excess of the Guidelines sentencing range determined by the Court at the time the sentence is imposed; and claims of ineffective assistance of counsel.  (Doc. 31 at 20-22.)

An appeal waiver is enforceable if it was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1350–51 (11th Cir. 1993).  An appeal waiver will be enforced if either "the district court specifically questioned the defendant about the waiver during the plea colloquy" or "the record clearly shows that the defendant otherwise understood the full significance of the waiver." *United States v. Crrinard–Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005) (quotation marks omitted). During Tate's change of plea hearing, the Court specifically questioned Tate about the appeal waiver and confirmed that Tate understood its terms. *See* Transcript of Change of Plea Hearing, doc. 159, at 20.  Further, Tate does not dispute that she knowingly and voluntarily waived her right to challenge her convictions and sentences

in post conviction proceedings. Thus, Tate's appeal waiver is valid and enforceable. The particular claims that are barred by the waiver are discussed below.

    C.    Tate's claim of ineffective assistance of counsel related to her decision to plea guilty

Tate's first claim is that her guilty plea was "involuntary" as a result of ineffective assistance of counsel because her attorney did not warn her of the Guidelines enhancements that would be applied to her sentence. She claims that had her attorney told her that her sentence would be enhanced because the loss amount was over $200,000, the offense involved more than 50 victims, and she held a supervisory role, she would not have pled guilty and would have insisted on going to trial. Tate's plea agreement does not bar this claim because the appeal waiver contains an exception allowing her to bring an ineffective assistance of counsel claim in a post-conviction motion. However, even taking Tate's allegation as true that her attorney did not discuss possible enhancements with her, she fails to state a claim upon which relief may be granted.

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion as opposed to on direct appeal and are therefore not subject to a procedural bar. *Massaro v. United States*, 538 U.S. 500, 504 (2003). The applicable standard is well-established: post-conviction relief will not be granted on a claim of

ineffective assistance of counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). More specifically, the movant must show that: (1) her counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. The court need not " address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. This two part standard is applicable to ineffective-assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  With regard to the prejudice prong in the context of a guilty plea, the defendant must show " that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Federal Rule of Criminal Procedure 11, which governs procedures related to entering a plea of guilty, does not afford a criminal defendant the right to be apprised of her applicable Guidelines range or the actual sentence the defendant will receive. Rule 11 only requires that the court inform the defendant of the applicable mandatory minimum and maximum *statutory* sentences and of its obligation to calculate the

applicable sentencing guideline range and to consider that range, possible departures, and other sentencing factors under 18 U.S.C. § 3553(a). *See* Fed. R. Crim. P. 11(b)(1); *see also* commentary to Rule 11(c)(1) (indicating that a defendant should be informed of the existence of the Guidelines but is not entitled to know what his Guidelines range is prior to pleading guilty because a change of plea hearing takes place before the PSR is formulated).  Here, Tate's signed plea agreement informed her of the applicable mandatory and minimum statutory sentences for each of the counts that she pled guilty to (doc. 31 at 2-4), and the Court complied with Rule 11 at Tate's change of plea hearing by advising her of the applicable statutory sentence as to each count that she was pleading guilty to and confirming that she understood.  (Doc. 159 at 15-18.) Moreover, Tate initialed the page in her signed plea agreement in which she confirmed that her counsel had explained to her the existence of the Guidelines and their advisory nature, as follows:

> Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are advisory in nature.  Sentencing is in the court's discretion and is no longer required to be within the guideline range.  The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

(Doc. 31 at 22.)  Additionally, at her change of plea hearing, the Court explained to

Tate that her sentence would be imposed in consideration of the Guidelines, as follows:

> THE COURT:        Another thing I need to make sure you do understand is the range of punishment. There is two ranges of punishment we are going to talk about.  One is the sentencing guidelines range and the other is the statutory range. The advisory guideline range is just that, it's advisory.  I assume your lawyer has told you what she anticipates, has she done that?
>
> THE DEFENDANT:    Yes she has.
>
> THE COURT:        I can tell you this.  She might have it exactly correct but again might have it incorrect. Nobody can tell you what your guideline range will end up being until we have your sentencing hearing, do you understand that?
>
> THE DEFENDANT:    Yes, sir.

(Doc. 159 at 14-15.)  The Court thus complied with Rule 11 by ensuring that Tate was sufficiently informed of the consequences of her guilty plea.  *See United States v. Mosley*, 173 F.3d 1318, 1327 (11th Cir. 1999) ("When a defendant is informed of a mandatory statutory sentence at his plea colloquy and sentenced within that range, . . . the failure to advise of a Sentencing Guidelines sentencing range is harmless error under Federal Rule of Criminal Procedure 11(h), as long as the defendant knew that

the Sentencing Guidelines existed and that they would affect his sentence.") (footnote omitted); *see also United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990) ("Because appellant was fully aware that his ultimate sentence under the agreement was subject to later determination by the court based on a variety of factors at the time he entered into it, the fact that he did not know specifically that he would be subject to sentencing in [a particular] range does not mean that it was entered into unknowingly and unintelligently."). Under these circumstances, the alleged failure of Tate's lawyer to predict and inform her of which Guidelines enhancements would be applied by the Court at sentencing does not establish that her lawyer's representation fell below an objective standard of reasonableness, as required for a *Strickland* claim. *See United States v. Smith*, 143 F. App'x 559, 561 (5th Cir. 2005) (rejecting claim by a defendant that his attorney's failure to inform him of a potential career offender enhancement rendered his plea involuntary). Habeas relief is not warranted on this claim.

D.   Tate's claim that she was induced to enter a guilty plea by an alleged threat related to her disabled son

Well over a year after pleading guilty, Tate alleges for the first time that she was induced to enter the plea by a threat that her disabled son would be prosecuted if she did not plead guilty. However, she fails to explain anywhere in her pleadings who

made the alleged threat, in what manner it was communicated to her, or when it was communicated to her.

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). At the same time, plea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging her plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74.

At Tate's change of plea hearing, the Court asked her if anyone had threatened her or coerced her in any way to get her to plead guilty, to which she answered no.

(Doc. 159 at 20.)  The Court then asked her if anyone made her any promise other than in the plea agreement to get her to plead guilty, to which she answered no.  (*Id.*)  There is " a 'strong presumption' that statements made by the defendant during h[er] plea colloquy are true."  *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)).  " [T]herefore, 'when a defendant makes statements under oath at a plea colloquy, [s]he bears a heavy burden to show h[er] statements were false.' "  *Id.* (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988)).  Tate was placed under oath at the beginning of her guilty plea proceeding before she was asked any questions by the Court.  Tate has made no attempt to explain how and why her guilty plea testimony that she was not coerced should now be deemed false.

An evidentiary hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).  Tate is not entitled to habeas relief on this claim.

> E.    Tate's claim of ineffective assistance of counsel related to the amended judgment and final order of forfeiture

Tate alleges that she " was sentenced to a dollar amount that was found to not be true and was later corrected.  Had my attorney investigated, she would have been

aware of this error and the money enhancement would have been lowered." (Doc. 3 at 21.) Insofar as this claim alleges ineffective assistance of counsel, it is not barred by her appeal waiver.  Tate is presumably taking issue with the fact that the Court corrected clerical errors in the judgment and final order of forfeiture some months after they were entered.  The restitution portion of the first judgment stated that Tate owes $29,504.00 to Regions Bank; $28,634.33 to Wells Fargo; and $1981.37 to BBVA Compass.  It stated that Tate owes these amounts jointly and severally with any convicted co-defendants.  The judgment was corrected to specify that the total amount of restitution owed to Wells Fargo Bank is $43,104.00, and that of that total amount, Tate and the four co-defendants owe $28,634.33 jointly and severally, and the four co-defendants (not including Tate) owe $14,469.67 jointly and severally.  It was also corrected to specify that the total amount of restitution owed to Regions Bank is $29,504.00, and that of that total amount, Tate and the four co-defendants owe $22,697.29 jointly and severally, and Tate and three out of the four co-defendants owe $6,806.71 jointly and severally.  Finally, it was corrected to specify that the $1981.37 owed to BBVA is owed jointly and severally by Tate and the four co-defendants.  None of the dollar amounts Tate owes in restitution was altered by these clerical corrections.  As to the final order of forfeiture, which imposed a money judgment

against Tate in the amount of $60,119.70, it was corrected to impose that same money judgment amount against Tate jointly and severally with the four other co-defendants, and the judgment was amended to reflect that as well.

Tate's claim fails for several reasons. First, one of the two requirements of the *Strickland* test is to show that the defendant was prejudiced by the attorney's misconduct. 466 U.S. at 687. Tate cannot show that she was prejudiced by the fact that her attorney did not discover these errors at an earlier time because she was not subject to any changes in her sentence by the correction of these errors. Indeed, a court cannot even correct a clerical error under Fed. R. Crim. P. 36 if the change would "fundamentally alter [the defendant's] sentence" by increasing the restitution obligation. *United States v. Portillo*, 363 F.3d 1161, 1165 (11th Cir. 2004). In other words, a clerical error contemplated by Rule 36 is by definition one that does not affect a defendant's sentence such that she would have to be re-sentenced. Second, Tate's argument that her 12-level enhancement based on a loss amount of over $200,000 would have somehow not been applicable had her attorney discovered these clerical errors is misplaced. Tate stipulated to this loss amount in her plea agreement, long before restitution amounts were even determined. (Doc. 31 at 15.) Indeed, she stipulated to the fact that the face value of stolen checks and money orders recovered

during the search her residence exceeded $236,000. (*Id.*) To the extent she is arguing that based on the amount of restitution, the loss amount for Guidelines enhancement purposes should be lower, the argument lacks merit because restitution and amount of loss for the purposes of U.S.S.G. § 2B1.1 are not the same.  This is because a party may suffer an actual pecuniary loss without seeking restitution.  *See United States v. Smiley*, 210 F. App'x 972, 975 (11th Cir. 2006) ("The fact that the [victims] did not seek restitution does not mean they did not sustain an actual loss.").  Finally, to the extent Tate is challenging the restitution amount, she is prohibited from doing so in a § 2255 motion because relief from restitution is not a remedy authorized by the statute.  *See Blaik v. United States*, 161 F.3d 1341, 1342-43 (11th Cir. 1989).  Habeas relief is not warranted on this claim.

> F.   Tate's claim that the Court erred under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), by applying enhancements based on facts not found by a jury

Tate's final claim is that she was denied her Sixth Amendment right to a jury trial because the enhancements applied to her sentence for her role in the offense, the loss amount, and the number of victims were based on factors that were not charged in the indictment, were not found beyond a reasonable doubt by the jury, and were not admitted to by her.

As an initial matter, Tate's claim is foreclosed by the appeal waiver in her plea agreement, as it does not fall into the limited exceptions contained therein.  Tate was neither sentenced in excess of the statutory maximum on any count nor was she sentenced in excess of the applicable Guidelines range on any count.  To the contrary, the Court sentenced Tate to the low end of the Guidelines range on Counts 1, 2, and 3, and then granted a downward departure of twenty percent due to substantial assistance on that sentence.  Additionally, the Court chose to run the mandatory statutory two-year sentences on Counts 7 and 9 concurrently with each other rather than consecutively.  In any event, the Court has already determined that Tate's appeal waiver was entered into knowingly and voluntarily.  As such, the Court need not consider this claim.  *See Bushert*, 997 F.2d at 1350–51(appeal waivers entered into knowingly and voluntarily are enforceable).

Additionally, even if Tate had not waived this claim, *Alleyne* does not apply to her case.  The Eleventh Circuit has explained why, as follows:

> In *Apprendi v. New Jersey*, the Supreme Court held that a fact, other than a prior conviction, that increases the maximum penalty for a crime is an element of the crime that must be submitted to a jury.  530 U.S. 466, 490–91 (2000). In *Alleyne*, the Supreme Court extended *Apprendi's* holding to facts, other than a prior conviction, that increase the mandatory minimum prescribed by a statute, while recognizing that such facts are distinct from fact-findings that guide judicial discretion in selecting a punishment within limits fixed by law. *Alleyne*, 133 S. Ct. at

2161 & n.2.  Indeed, the Supreme Court cautioned that its holding did not disturb judicial fact findings at sentencing for facts that do not impact the statutory punishment. *See id.* at 2163.

Accordingly, a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict. *See United States v. McGarity*, 669 F.3d 1218, 1257 (11th Cir. 2012) (concluding that under an advisory guidelines regime, judicial fact-findings that support a sentence within the statutory maximum set forth in the United States Code do not violate the Sixth Amendment); *United States v. Dean*, 487 F.3d 840, 854 (11th Cir. 2007).

*United States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014).

As in *Charles*, the Court's finding that Tate had a supervisory role in the offense, that the offense had 50 or more victims, and that the loss amount was over $200,000, affected Tate's advisory Guidelines range but did not increase the statutory minimum or maximum sentence for any of Tate's convictions.  Enhancing her sentence based on this judicial fact-finding was therefore not *Alleyne* error.[2]

## IV.   CONCLUSION

For the foregoing reasons, Tate's § 2255 motion is due to be denied and this action dismissed with prejudice.

---

[2] Moreover, and as already noted, Tate's signed plea agreement waives any right to have the facts used to reach a Guidelines range found by a jury beyond a reasonable doubt.  (Doc. 31 at 22.)

This Court may issue a certificate of appealability " only if the applicant has a made a substantial showing of the denial of a constitutional right."   28 U.S.C. 2253(c)(2). To make such a showing, a " petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong,"   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that " the issues presented were adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted).  This Court finds Tate's claims do not satisfy either standard.

A separate order will be entered.

Done this 24th day of February 2015.

_____

L. Scott Coogler
United States District Judge

[160704]